UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LEONARD WILLIAMS,

                Plaintiff,

v.

L. GUESTER, et al.,

                Defendants.

_____/

Case No. 1:22-cv-984

Honorable Phillip J. Green

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought (ECF No. 3) and was granted leave to proceed *in forma pauperis* (ECF No. 4).  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge.  (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c).  The Court is required to conduct this initial review prior to the service of the complaint.  *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion.  *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Page and Unknown Parties #1, #2, #3, #4, #5, #6, #8, #9, and

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

#10.[2]  The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment and Fourteenth Amendment equal protection claims against remaining Defendants Shirah and Davis.  Plaintiff's Eighth Amendment claim against Defendant Guester, and his First Amendment retaliation claim against Defendants Shirah and Davis remain in the case.

## **Discussion**

### I.   **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan.  The events about which he complains occurred at that facility. Plaintiff sues the following LRF officials and medical staff: Corrections Officers L. Guester, Unknown Party #1, Unknown Party #2, Unknown Party #3, Unknown Party #4, and Unknown Party #5; Sergeant Unknown Party #6; Registered Nurse Unknown Party #8;[3] Nurse Supervisor Unknown Party #9; Inspector Unknown Page; Food Service Supervisors Unknown Shirah and Unknown Davis; and Health Unit Manager Unknown Party #10. (Compl., ECF No. 1, PageID.2–4.)

---

[2] As discussed herein, there is no Defendant Unknown Party #7 in this action. *See infra* note 3.

[3] On the docket for this matter, inadvertently, no Defendant was listed as Unknown Party #7. As such, the unknown parties in this action are identified as Unknown Parties #1–6 and 8–10. To avoid any confusion, in this opinion, the Court retains the numbering used on the docket.

In Plaintiff's complaint, he alleges that on April 5, 2022, Defendants Corrections Officers Guester and Unknown Parties #1, #2, #3, #4, and #5, as well as Sergeant Unknown Party #6, "came to [Plaintiff's] cell to conduct a cell search of random prisoners in the Eastlake housing unit at [LRF]."   (*Id.*, PageID.7.)[4] Defendant Guester ordered Plaintiff "to step out of the cell" and to then "spread his legs and raise his arms."   (*Id.*)   Defendant Guester began "patting [Plaintiff] down from behind," and as Defendant Guester was "reaching between [Plaintiff's] legs with his right hand, Guester grabbed Plaintiff's right scrotum and the right side of his penis."   (*Id.*)   Plaintiff "pulled away and asked Defendant Guester, 'what are you doing man?'"   (*Id.*)   "One of the officers watching grabbed [Plaintiff's] arm and ordered him to be still."   (*Id.*)   Thereafter, "Guester reached again and grabbed [Plaintiff's] left scrotum and grabbed the left side of [Plaintiff's] penis."   (*Id.*)   Plaintiff then "yell[ed] in pain."   (*Id.*)   "More officers who [were] watching the assault surrounded [Plaintiff] and threatened to place him in the hole if he didn't be still."   (*Id.*)   Plaintiff asked, "How can I be still when this officer is sexually assaulting me?"   (*Id.*)   "Several officers responded, 'Hey, write a grievance like you did on health service f***boy.'" (*Id.* (asterisks added).)   Plaintiff contends that Defendant Guester "then grabbed both of [Plaintiff's] buttocks with both hands, [and] then penetrated [Plaintiff's] anus with his right index finger through [Plaintiff's] shorts causing a searing pain to shoot through [Plaintiff's] body."   (*Id.*, PageID.8.)

---

[4] In this opinion, the Court corrects the spelling, capitalization, and punctuation in quotations from Plaintiff's filings.

The following day, Plaintiff "notified health services with complaints of pain in his rectum and spots of blood when he used the bathroom." (*Id.*, PageID.9.)  Plaintiff also filed a Prison Rape Elimination Act (PREA) complaint.  (*Id.*)  Two weeks after notifying health care, Plaintiff was evaluated by Defendants Nurse Unknown Party #8 and Nurse Supervisor Unknown Party #9.  (*Id.*)  Plaintiff asked these Defendants "why he had not been evaluated until 2 weeks later," and they stated, "[b]ecause most 'PREA' complaints by prisoners are lies anyway; we have better things to do."  (*Id.*)

In a report regarding Plaintiff's PREA complaint, Defendant Inspector Page stated that "[a] thorough investigation was completed on 6–16–2022."  (*Id.*)  Plaintiff states that "[i]t had not," explaining that neither "Defendant Guester nor any of the other Defendants who watched Guester's assault . . . [were] investigated by Defendant Page." (*Id.*, PageID.9–10.)  Plaintiff also states that the report incorrectly described the incident as a "prisoner on prisoner sexual abuse contact complaint," rather than "a staff on prisoner sexual abuse complaint."  (*Id.*, PageID.10.)

On June 11, 2022, Plaintiff "did not receive a sub[stitution] tray, thus not eating for the third time since filing his sexual assault claim."  (*Id.*)  Plaintiff informed a non-party officer about the issue, and the non-party officer "got into an argument with Defendant [Food Service Supervisor] Shirah over why they would stop sending Plaintiff . . . a sub[stitution] tray when they had been sending him one since Nov. 2021 when he arrived at LRF."  (*Id.*, PageID.10–11.)  Since June 11, 2022, to the date that Plaintiff filed his complaint in October of 2022, he was receiving "segregation/vegetarian diet trays[] against his will," and Defendant Food Supervisor

Davis told Plaintiff that "Eastlake level-6 prisoners who write PREA complaints on corrections officers don't get to choose when they want to eat substituted meals." (*Id.*, PageID.11.) Plaintiff states that Defendants Shirah and Davis have denied Plaintiff the "opportunity to request a substitution tray," specifically a "pescatarian[5] diet tray, causing [Plaintiff] to only be able to eat 1/3 of his rations." (*Id.*)

On an unspecified date, Plaintiff sent a kite requesting "a mental health evaluation and treatment." (*Id.*, PageID.12.) Plaintiff had an appointment with Bolar.[6] (*Id.*) Upon evaluation, Bolar stated, "[t]his always happens to certain kind[s] of prisoners; it's just prison life; if you have more issues just kite, but I'm not putting you on a regular counseling callout or medication." (*Id.*)

---

[5] As noted above, the Court corrects, *inter alia*, the spelling in quotations from Plaintiff's filings. In Plaintiff's complaint, he describes his desired diet as "piscatorian," and then when setting forth his claims, he describes his desired diet as "priscatorian." (Compl., ECF No. 1, PageID.11, 14.) It appears to the Court that Plaintiff intended to identify his desired diet as "pescatarian," and therefore the Court identifies it as such in this opinion. To the extent that Plaintiff intended to identify a different diet, other than pescatarian, the Court's analysis, as set forth in this opinion, would remain the same.

[6] In the body of Plaintiff's complaint, he describes Bolar as a Defendant; however, when listing the Defendants in this action, Plaintiff did not list Bolar. The Court notes that Defendant Health Unit Manager Unknown Party #10 is not mentioned in the body of Plaintiff's complaint, and as such, it is possible that Defendant Unknown Party #10 is named Bolar. Because Defendant Unknown Party #10 is not mentioned in the body of the complaint, this Defendant is subject to dismissal for that reason alone. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights). Regardless, to ensure that all of Plaintiff's claims are addressed in this opinion, the Court assumes, without deciding, that Defendant Unknown Party #10 is named Bolar. The Court therefore refers to Defendant Unknown Party #10 interchangeably as Unknown Party #10 and Bolar.

7

Based on the foregoing allegations, Plaintiff raises the following claims: that Defendants Corrections Officers Guester and Unknown Parties #1, #2, #3, #4, and #5, as well as Sergeant Unknown Party #6, violated his Eight Amendment rights when Defendant Guester sexually assaulted him and the other officers failed to intervene; that Defendant Page violated his First, Fifth, Eighth, and Fourteenth Amendment rights by failing to properly investigate Plaintiff's PREA complaint; that Defendants Registered Nurse Unknown Party #8 and Nurse Supervisor #9 violated his Eighth Amendment rights by failing to timely evaluate Plaintiff's injuries following the assault; that Defendants Food Service Supervisors Shirah and Davis violated his First, Eighth, and Fourteenth Amendment rights by denying him a pescetarian diet; and that Defendant Health Unit Manager Unknown Party #10 violated his Eighth Amendment rights by failing to provide adequate mental health care.  (*Id.*, PageID.13–14.)   As relief, Plaintiff seeks a declaratory judgment, as well as compensatory and punitive damages. (*Id.*, PageID.16–17.)

## II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Defendants Corrections Officers Guester and Unknown Parties #1–5, and Sergeant Unknown Party #6

Plaintiff alleges that Defendants Corrections Officers Guester and Unknown Parties #1–5, as well as Sergeant Unknown Party #6, violated his Eighth Amendment

rights. (Compl., ECF No. 1, PageID.13.) Specifically, Plaintiff avers that on April 5, 2022, these Defendants "came to [Plaintiff's] cell to conduct a cell search of random prisoners in the Eastlake housing unit." (*Id.*, PageID.7.) Defendant Guester then searched Plaintiff's person, and in the course of searching Plaintiff, Plaintiff alleges that Defendant Guester sexually assaulted him multiple times. (*See id.*, PageID.7–8.) Plaintiff contends that when Plaintiff pulled away from Defendant Guester, "[o]ne of the officers watching grabbed [Plaintiff's] arm and ordered him to be still." (*Id.*, PageID.7.) Additionally, after Defendant Guester grabbed Plaintiff's genitals again, and Plaintiff "yell[ed] in pain," "[m]ore officers who [were] watching the assault surrounded [Plaintiff] and threatened to place him in the hole if he didn't be still." (*Id.*) Plaintiff then asked, "How can I be still when this officer is sexually assaulting me?" (*Id.*) "Several officers responded, 'Hey, write a grievance like you did on health service f***boy.'" (*Id.* (asterisks added).)

### 1. Defendants Corrections Officers Unknown Parties #1–5 and Sergeant Unknown Party #6

Although Plaintiff alleges facts describing the actions taken by Defendant Guester, Plaintiff does not differentiate between the other officers who were present when describing their actions. Instead, Plaintiff describes the actions of this group of officers generally, and he does not indicate which of the officers took what action. (*See id.* (stating that "one officer" took an action, and also stating that "more officers" took an action).) It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a

defendant fair notice of the claim); *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))).  "Summary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable for [the claimed constitutional violation]."  *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citing *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011)).

Because Plaintiff fails to attribute factual allegations to specific officers who were present during Plaintiff's interaction with Defendant Guester, Plaintiff fails to state an Eighth Amendment claim against these officers.  Accordingly, Plaintiff's Eighth Amendment claims against Defendants Unknown Parties #1, #2, #3, #4, #5, and #6 will be dismissed.

### 2.    Defendant Corrections Officer Guester

As set forth above, Plaintiff alleges that Defendant Guester sexually assaulted him multiple times while Defendant Guester was conducting a search of Plaintiff's person.  (Compl., ECF No. 1, PageID.7–8.)

"Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment[;] [t]his is true whether the sexual abuse is perpetrated by other inmates or by guards."  *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citations omitted); *Bishop v. Hackel*, 636 F.3d 757, 761 (6th Cir. 2011) (discussing inmate abuse); *Washington v. Hively*, 695 F.3d 641, 642

(7th Cir. 2012) (discussing abuse by guards).  However, the United States Court of Appeals for the Sixth Circuit Court has joined multiple other courts to conclude that even incidents of sexual touching coupled with sexual remarks may not rise to the level of an Eighth Amendment violation so long as the offensive conduct was "isolated, brief, and not severe[.]"  *Rafferty*, 915 F.3d at 1095 (quoting *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005)).  In contrast, repeated and extreme incidents may sufficiently state a claim.  For example, the Sixth Circuit found an Eighth Amendment violation when a male prison official sexually harassed a female prisoner by demanding on multiple occasions that the prisoner expose herself and masturbate while the official watched and intimidated her into complying.  *Id.* at 1095–96.

Here, taking Plaintiff's factual allegations as true and in the light most favorable to him, the Court may not dismiss Plaintiff's Eighth Amendment claim against Defendant Guester on initial review.

> **B. Defendants Registered Nurse Unknown Party #8, Nurse Supervisor Unknown Party #9, and Health Unit Manager Unknown Party #10**

Plaintiff alleges that Defendants Registered Nurse Unknown Party #8 and Nurse Supervisor Unknown Party #9 violated his Eighth Amendment rights by failing to timely evaluate Plaintiff's injuries following the April 5, 2022, assault, and that Health Unit Manager Unknown Party #10 violated his Eighth Amendment rights by failing to provide adequate mental health care.  (Compl., ECF No. 1, PageID.14, 15.)

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the United States Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or

14

treatment are not enough to state a deliberate indifference claim.  *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014).  This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering.  *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).  "Where the claimant received treatment for his condition, . . . he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'"  *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).  The prisoner must demonstrate that the care the prisoner received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental

fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

### 1.   Objective Component

On April 6, 2022, the day following the incident with Defendant Guester, Plaintiff "notified health services with complaints of pain in his rectum and spots of blood when he used the bathroom." (Compl., ECF No. 1, PageID.9.)  Additionally, on an unspecified date, Plaintiff states that he sought mental health services for "feelings of depression, anxiety, homicidal and suicidal ideologies and feelings, and [post-traumatic stress disorder]." (*Id.*, PageID.12.)  Based on Plaintiff's allegations regarding these medical conditions, at this stage of the proceedings, the Court assumes, without deciding, that Plaintiff has adequately alleged the objective component of the relevant two-prong test.

### 2.   Subjective Component

With respect to Defendant Nurse Unknown Party #8's and Defendant Nurse Supervisor Unknown Party #9's involvement in Plaintiff's receipt of medical care, Plaintiff alleges that he was evaluated by these Defendants two weeks after he requested medical care for issues stemming from the April 5, 2022, incident with Defendant Guester. (*Id.*, PageID.9.)  When Plaintiff asked these Defendants "why he had not been evaluated until 2 weeks later," they stated, "[b]ecause most 'PREA' complaints by prisoners are lies anyway; we have better things to do." (*Id.*)  Although this statement by Defendants Nurse Unknown Party #8 and Nurse Supervisor Unknown Party #9 was unprofessional, Plaintiff fails to allege any facts suggesting that these Defendants knew that Plaintiff had submitted a request to health care

16

services on April 6, 2022, or that they had any involvement in determining when Plaintiff would be scheduled for a health care appointment. (*See id.*); *see also Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008) (discussing that a claimed constitutional violation must be based upon active unconstitutional behavior).

Additionally, Plaintiff alleges no facts regarding the treatment that he received from Defendants Nurse Unknown Party #8 and Nurse Supervisor Unknown Party #9 during his appointment with them. (*See* Compl., ECF No. 1, PageID.9.) Plaintiff appears to ask the Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim, factual allegations do. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Plaintiff therefore fails to state an Eighth Amendment claim against Defendants Unknown Parties #8 and #9.

As to Defendant Health Unit Manager Unknown Party #10,[7] Plaintiff alleges that after he sent a kite "requesting a mental health evaluation and treatment" due to a variety of mental health-related concerns, he had an appointment with this Defendant. (Compl., ECF No. 1, PageID.12.) Upon evaluation, this Defendant stated, "[t]his always happens to certain kind[s] of prisoners; it's just prison life; if you have more issues just kite, but I'm not putting you on a regular counseling callout or

---

[7] As discussed above, the Court refers to Unknown Party #10 and Bolar interchangeably when addressing Plaintiff's claims. *See supra* note 6.

medication." (*Id.*)  Based on the facts alleged by Plaintiff, it is clear that Plaintiff disagreed with this Defendant's assessment and treatment plan; however, "a patient's disagreement with his physicians [or other medical providers] over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah*, 865 F.3d at 372 (citations omitted); *Mitchell*, 553 F. App'x at 605 ("[A] desire for additional or different treatment does not suffice by itself to support an Eighth Amendment claim." (citations omitted)).  Moreover, although Plaintiff alleges that he "is currently still having dreams of being raped and tortured by prison guards" and "has anxiety," Plaintiff fails to allege any facts to suggest that he has alerted LRF medical staff about his continued mental health concerns, let alone that he has told Defendant Unknown Party #10 about his continued concerns.  *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Accordingly, because Plaintiff has failed to allege facts showing that Defendants Unknown Parties #8, #9, and #10 were deliberately indifferent to Plaintiff's serious medical needs, Plaintiff's Eighth Amendment claims against Defendants Unknown Parties #8, #9, and #10 will be dismissed.

### C.    Defendant Inspector Page

Plaintiff alleges that Defendant Inspector Page violated his First, Fifth, Eighth, and Fourteenth Amendment rights by failing to properly investigate Plaintiff's PREA complaint.  (Compl., ECF No. 1, PageID.14.)  As explained below, all

of Plaintiff's claims against Defendant Page will be dismissed because Plaintiff fails to state any claim against Defendant Page upon which relief may be granted.

### 1.    First Amendment Claim

Plaintiff first alleges that Defendant Page violated his First Amendment rights by retaliating against him.  (*Id.*, PageID.9, 14.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### a.    Protected Conduct

With respect to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral.  *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018).  Here, Plaintiff alleges that he filed a PREA complaint regarding the incident with Defendant Guester, (Compl., ECF No. 1, PageID.9), and Plaintiff's PREA complaint constitutes protected conduct.  However, as explained below, Plaintiff's allegations

regarding the second and third elements of a First Amendment retaliation claim fall short.

### b.  Adverse Action and Retaliatory Motive

As to the second element, the adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted.  The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence.  *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).  Here, although it is clear that Plaintiff disagreed with Defendant Page's conclusions regarding the investigation into Plaintiff's PREA complaint (*see* Compl., ECF No. 1, PageID.9–10), Plaintiff was not entitled to have Defendant Page's investigation resolve in his favor.  The Court therefore concludes that Defendant Page's investigation did not constitute an adverse action.  And, Plaintiff alleges no facts describing any other adverse action that Defendant Page took against him.

Moreover, even assuming that Plaintiff had shown that Defendant Page took an adverse action against him, he fails to satisfy the third element of a retaliation claim.  To satisfy this third element, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.  However, in this action, Plaintiff fails to provide any explanation about how Defendant Page retaliated against him.  At most, Plaintiff's facts suggest temporal proximity because Defendant Page authored a report about Plaintiff's PREA complaint after Plaintiff had filed that complaint.  However, Plaintiff merely alleges the ultimate fact of retaliation, and he alleges no *facts* from which to reasonably infer

that Defendant Page was motivated by any protected conduct.  (*See* Compl., ECF No. 1, PageID.9–10.)   Under these circumstances, a vague suggestion of temporal proximity alone is insufficient to show a retaliatory motive.  *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987).   Furthermore, such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Accordingly, for the reasons set forth above, Plaintiff fails to state a First Amendment retaliation claim against Defendant Page.

### 2.  Fifth Amendment Claim

Plaintiff suggests that Defendant Page violated his right to due process under the Fifth Amendment.  (*See* Compl., ECF No. 1, PageID.14.)  The Fifth Amendment, however, applies only to claims against federal employees.  In this action, Defendant Page, as well as the other Defendants, are employees of the MDOC.   Plaintiff, therefore, cannot maintain his Fifth Amendment claim against Defendant Page, and this claim will be dismissed.  *See, e.g.*, *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 873 n.8 (6th Cir. 2000) (noting that "[t]he Fourteenth Amendment's Due Process Clause

restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government").

### 3.    Eighth Amendment Claim

Without providing any further explanation, Plaintiff references the Eighth Amendment and "cruel and unusual punishment" when setting forth his claims against Defendant Page.  (Compl., ECF No. 1, PageID.14.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).   The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).

Although Plaintiff's complaint contains a cursory reference to Defendant Page violating Plaintiff's Eighth Amendment rights, Plaintiff fails to allege any facts to suggest that Defendant Page engaged in any active conduct that violated such rights. Specifically, Plaintiff contends only that Defendant Page reported the findings of the investigation into Plaintiff's PREA complaint—which Plaintiff believes was an

inadequate investigation—however, Plaintiff does not allege that Defendant Page took any other action.

The Sixth Circuit has held that where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The reason is that there must be active unconstitutional behavior. Failing to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior by a person who merely denies an administrative grievance. *Id.*

Furthermore, to the extent that Plaintiff seeks to hold Defendant Page liable for the actions of his subordinates, government officials, such as Defendant Page, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter*, 532 F.3d at 575–76; *Greene*, 310 F.3d at 899. The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, as discussed above, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300.

Accordingly, for all of the reasons set forth above, Plaintiff's Eighth Amendment claim against Defendant Page will be dismissed.

### 4. Fourteenth Amendment Due Process Claims

### a. Procedural Due Process

Plaintiff claims that Defendant Page violated his right to due process under the Fourteenth Amendment by failing to properly investigate Plaintiff's PREA complaint. (*See* Compl., ECF No. 1, PageID.14.) Specifically, Plaintiff contends that in a report addressing Plaintiff's PREA complaint, Defendant Page stated that "[a] thorough investigation was completed on 6–16–2022." (*Id.*, PageID.9.) Plaintiff disputes the assertion that there was a "thorough investigation," explaining that neither "Defendant Guester nor any of the other Defendants who watched Guester's assault . . . [were] investigated by Defendant Page." (*Id.*, PageID.9–10.) Plaintiff also states that the report incorrectly described the incident as a "prisoner on prisoner sexual abuse contact complaint," rather than "a staff on prisoner sexual abuse complaint." (*Id.*, PageID.10.)

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

With respect to Defendant Page's allegedly inadequate investigation into Plaintiff's PREA complaint, Plaintiff alleges no facts to suggest that, as a result of the investigation, he stood to be deprived of his life, liberty, or property, such that he would be entitled to due process of law.[8] *Cf. Wolff v. McDonnell*, 418 U.S. 539, 563–69 (1974) (setting forth the minimum process required for prison disciplinary proceedings that implicate a liberty interest). Furthermore, "a claim based on an inadequate investigation fails to state a constitutional violation because private citizens have no constitutional or federal statutory right to compel the investigation of another person." *Miles v. Mitchell*, No. 3:18-CV-P116-CRS, 2018 WL 5929643, at *5 (W.D. Ky. Nov. 13, 2018) (citing, *inter alia*, *Diamond v. Charles*, 476 U.S. 54, 64–65 (1986)); *see also Browder v. Parker*, No. 5:11CV-P29-R, 2011 WL 2379406, at *7 (W.D. Ky. Jun. 15, 2011) ("Private citizens, whether or not they are incarcerated, have no constitutional or federal statutory right to compel the investigation of another person." (citing *Diamond*, 476 U.S. at 64–65; *White v. City of Toledo*, 217 F. Supp. 2d 838, 841 (N.D. Ohio 2002))).

Moreover, Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due

---

[8] To the extent Plaintiff contends that Defendant Page failed to comply with PREA guidelines, Plaintiff cannot maintain such a claim. Plaintiff "has no independent cause of action for any [individual's] failure to comply with the [PREA]." *Beeman v. Heyns*, No. 1:16-cv-27, 2016 WL 1316771, at *12 n.4 (W.D. Mich. Apr. 5, 2016) ("Although not addressed in the Sixth Circuit, district courts have found that the PREA does not create a private cause of action which can be brought by an individual plaintiff." (quoting *Montgomery v. Harper*, No. 5:14-cv-P38R, 2014 WL 4104163, at *2 (W.D. Ky. Aug. 19, 2014))).

process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).

For all of these reasons, Plaintiff fails to state a Fourteenth Amendment procedural due process claim against Defendant Page, and this claim will be dismissed.

### b.    Substantive Due Process

To the extent that Plaintiff intended to raise a substantive due process claim regarding Defendant Page's allegedly inadequate investigation into Plaintiff's PREA complaint, he fails to state such a claim. "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481

26

U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

In this action, Plaintiff fails to allege conduct that is sufficiently outrageous to support a substantive due process claim. Based on the facts alleged by Plaintiff, it is clear that Plaintiff disagreed with Defendant Page's report regarding Plaintiff's PREA complaint, however, Plaintiff was not entitled to have Defendant Page's investigation resolve in his favor. Plaintiff's allegations fall short of demonstrating the sort of egregious conduct that would support a substantive due process claim. Consequently, any intended substantive due process claim against Defendant Page will be dismissed.

### D. Defendants Food Service Supervisors Shirah and Davis

Plaintiff alleges that Defendants Food Service Supervisors Shirah and Davis violated his First, Eighth, and Fourteenth Amendment rights. (Compl., ECF No. 1, PageID.14.) The Court addresses each of Plaintiff's claims against Defendants Shirah and Davis in turn.

#### 1. First Amendment Retaliation Claim

Plaintiff first alleges that Defendants Shirah and Davis violated his First Amendment rights by retaliating against him. (*See id.*) Specifically, Plaintiff claims that since June 11, 2022, to the date that Plaintiff filed his complaint, he was receiving "segregation/vegetarian diet trays[] against his will," and Defendant Food Supervisor Davis told Plaintiff that "Eastlake level-6 prisoners who write PREA complaints on corrections officers don't get to choose when they want to eat

27

substituted meals." (*Id.*, PageID.11.) Plaintiff states that Defendants Shirah and Davis have denied Plaintiff the "opportunity to request a substitution tray," specifically a "pescatarian diet tray." (*Id.*)

As discussed above in greater detail, in order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *See Thaddeus-X*, 175 F.3d at 394; *see also supra* Part II.C.1. Although Plaintiff has by no means proven his retaliation claim, taking Plaintiff's factual allegations as true and in the light most favorable to him, the Court will not dismiss Plaintiff's First Amendment retaliation claim against Defendants Shirah and Davis on initial review.[9]

## 2. Eighth Amendment Claim

Plaintiff next alleges that Defendants Shirah and Davis violated his Eighth Amendment rights by denying Plaintiff's requests for "a pescatarian diet tray, causing [Plaintiff] to only be able to eat 1/3 of his rations" from June 11, 2022, to the

---

[9] The Court notes, however, that it is not at all apparent that Plaintiff is entitled to receive a pescatarian diet. If Plaintiff is not entitled to receive this diet, then any complaints or grievances regarding his failure to receive the diet may not be non-frivolous. *See Maben*, 887 F.3d at 265 (discussing that an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral, and the filing of a non-frivolous grievance constitutes protected activity— which is the first element of a First Amendment retaliation claim). Nonetheless, at this stage of the proceedings, the Court will not dismiss Plaintiff's retaliation claims against Defendants Shirah and Davis.

date that Plaintiff filed his complaint in October of 2022. (Compl., ECF No. 1, PageID.11, 14.)

"The Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including [e]nsuring, among other things, that prisoners receive adequate . . . food . . . ." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832). However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. Thus, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation. *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam).

Here, Plaintiff alleges that on June 11, 2022, he "did not receive a sub[stitution] tray, thus not eating for the third time since filing his sexual assault claim" in April 2022. (Compl., ECF No. 1, PageID.10.) Plaintiff informed a non-party officer about the issue, and the non-party officer "got into an argument with Defendant [Food Service Supervisor] Shirah over why they would stop sending Plaintiff . . . a sub[stitution] tray when they had been sending him one since Nov. 2021 when he arrived at LRF." (*Id.*, PageID.10–11.) Plaintiff claims that since June 11, 2022, to the date that Plaintiff filed his complaint, he received "segregation/vegetarian diet trays," rather than pescetarian diet trays, which he had requested. (*Id.*, PageID.11.)

29

As an initial matter, Plaintiff does not explain why he requires a pescatarian diet. Plaintiff also does not explain why the "segregation/vegetarian diet trays" are inadequate. Although Plaintiff may prefer to receive fish as part of his pescatarian diet, Plaintiff alleges no facts to suggest that he must eat fish and that he cannot eat the "segregation/vegetarian diet trays." (*See id.*, PageID.10–11.) Under these circumstances, Plaintiff's allegations regarding the denial of his *preferred* pescatarian diet do not demonstrate that the conditions of his confinement fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal quotation marks omitted)); *cf. Payne v. Doe*, 636 F. App'x 120, 123 (3d Cir. 2016) ("Providing meals that only accommodate either a prisoner's allergies or his religious beliefs but not both is not a deprivation of the 'minimal civilized measure of life's necessities.'" (citations omitted)).

Accordingly, for these reasons, Plaintiff's Eighth Amendment claim against Defendants Shirah and Davis will be dismissed.

### 3.    Fourteenth Amendment Equal Protection Claim

Liberally construing Plaintiff's complaint, as the Court is required to do, it appears that Plaintiff intended to allege that Defendants Shirah and Davis violated his right to equal protection under the Fourteenth Amendment by "discriminat[ing] against [Plaintiff's] right to a pescatarian diet" when they failed to provide him with

meal substitutions that met the criteria of this diet. (Compl., ECF No. 1, PageID.14.) Plaintiff does not explain why he is required to eat a pescatarian diet. (*See id.*, PageID.11, 14.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). "[P]risoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005). And, Plaintiff alleges no facts to suggest that Defendants Shirah and Davis interfered with a fundamental right.

Because neither a fundamental right nor a suspect class is at issue, Plaintiff's claim is reviewed under the rational basis standard. *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 298 (6th Cir. 2006). "Under rational basis scrutiny, government action amounts to a constitutional violation only if it 'is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational.'" *Id.* (quoting *Warren v. City of Athens,* 411 F.3d 697, 710 (6th Cir. 2005)). To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been

Case 1:22-cv-00984-PJG   ECF No. 6,  PageID.66   Filed 02/08/23   Page 32 of 34

intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, Plaintiff alleges in a conclusory manner that Defendants Shirah and Davis discriminated against him by failing to provide meal substitutions that fit the requirements of Plaintiff's pescatarian diet. However, Plaintiff fails to identify any other prisoners who were similarly situated, but treated differently. Instead, Plaintiff's allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

Moreover, to the extent that Plaintiff intended to assert an equal protection claim in a class-of-one case, he fails to state such a claim. "[T]he hallmark of [a 'class-of-one'] claim is not the allegation that *one individual* was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (alterations in original) (citations omitted); *see Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily." (emphasis in original)). A plaintiff "must overcome a 'heavy burden' to prevail based

on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citation omitted).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).  Even viewing Plaintiff's equal protection claim as a class-of-one claim, Plaintiff's equal protection claims are wholly conclusory.  Plaintiff fails to allege any facts to demonstrate that his fellow inmates were similar in all relevant aspects.  Plaintiff's conclusory allegations simply do not suffice to state a claim.

Accordingly, for all of the reasons set forth above, the Court will dismiss Plaintiff's Fourteenth Amendment equal protection claim against Defendants Shirah and Davis.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Page and Unknown Parties #1, #2, #3, #4, #5, #6, #8, #9, and #10[10] will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court will also dismiss, for

---

[10] As discussed above, there is no Unknown Party #7 listed on the docket for this matter. *See supra* note 3. Instead, it appears that the Clerk inadvertently skipped this number when listing the Defendants. As such, for consistency, the Court uses the names of the Defendants as they appear on the docket, which means that there is no Unknown Party #7.

failure to state a claim, Plaintiff's Eighth Amendment and Fourteenth Amendment equal protection claims against remaining Defendants Shirah and Davis.  Plaintiff's Eighth Amendment claim against Defendant Guester, and his First Amendment retaliation claim against Defendants Shirah and Davis remain in the case.

An order consistent with this opinion will be entered.


Dated:  February 8, 2023                    /s/ Phillip J. Green
                                            PHILLIP J. GREEN
                                            United States Magistrate Judge